# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES MAURICE CANNON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-4057 |
| | § | |
| RAYMOND S. LUPAU, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, files this section 1983 lawsuit complaining of civil rights violations by prison officers and officials Detrah Lacy, Austin McComb, Jr., Connley Moore, Vamerneters Regan, Kendra Helly, Mark Comeaux, Raymond Lupau, and Erma Gambrel.  Defendants filed a motion for summary judgment (Docket Entry No. 35), to which plaintiff responded and filed a cross-motion for summary judgment (Docket Entries No. 53, 54, 49,  50).

Based on consideration of the pleadings, the motions and response, the record, and the applicable law, the Court GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment, and DENIES plaintiff's cross-motion for summary judgment, for the reasons that follow.

### *Background and Claims*

Plaintiff alleges that, on May 4, 2009, he was working the morning kitchen detail at the Goree Unit.  All kitchen area workers arriving for work that morning were told that, due

to increased thefts from the kitchen, all inmate kitchen area workers would be strip searched for contraband when moving from the kitchen area into the dining area. Plaintiff states that he immediately complained aloud to the attending officer, defendant Comeaux, that it was unreasonable to subject him to repeat strip searches because his job duties required him to move trash bags from the dining room into the kitchen area throughout his shift. (Docket Entry No. 1, p. 3.) According to plaintiff, Comeaux responded, "Cannon, how did I know you would be the only inmate to speak out," and called plaintiff a "troublemaker." *Id.*

When it came time for plaintiff to move a bag of trash from the dining area to the kitchen later that morning, he again vocalized his complaints about the strip search policy, and the dining room officer, defendant Gambrel, asked defendant Lupau to escort plaintiff to the kitchen. Plaintiff argues that the purpose of the escort was to negate the need for a strip search; Gambrel and Lupau deny plaintiff's allegation, and state that the escort was for security reasons. In either event, Lupau ordered plaintiff to undergo a strip search after he moved the trash bag into the kitchen. Plaintiff declined, saying Gambrel had said it would not be necessary. Lupau then went into the kitchen area, informing Gambrel and other officers that plaintiff had refused a strip search. According to plaintiff, Gambrel told plaintiff, "From now on, just do what he says to avoid trouble, okay?" and told plaintiff to return to work. Plaintiff states that he was not strip searched until end of the shift, when all inmate kitchen workers were strip searched before being sent back to their cells. Plaintiff's Fourth Amendment and retaliation claims do not encompass this end-of-shift strip search.

The next morning, when he returned to work in the kitchen, plaintiff again voiced aloud his complaints about the strip search rule to defendant Comeaux, the officer on duty. He claims that Comeaux ordered him strip searched on suspicion of having contraband, but nothing was found. *Id.*, p. 5.

Plaintiff claims that, on May 5, 2009, he was served with notice of a major disciplinary infraction charge for failing to obey Lupau's order to submit to the strip search on May 4, 2009, in Disciplinary Case #20090237839 (the "Case").  At the hearing held May 11, 2009, defendant Reagan presided as the disciplinary hearing officer ("DHO"), and ultimately found plaintiff guilty of the infraction.  Plaintiff was punished with commissary and recreational restrictions, a loss of forty-five days good time credit, and a demotion from Level I to Level III custody status.  The change in custody status resulted in his being transferred from the minimum security Goree Unit to the medium security Beto Unit. Defendants and plaintiff report that the disciplinary conviction was subsequently overturned for technical reasons during the administrative appeal process.[1]

Plaintiff claims that the strip search order of May 4, 2009, and the strip search of May 5, 2009, were unreasonable and violated his Fourth Amendment rights.  He further claims that the strip search order, strip search, disciplinary conviction, and prison transfer were in

---

[1]Plaintiff had requested the DHO to ask Lupau ten questions he had written down for the hearing.  The DHO asked five of the ten questions that she found relevant.  She failed, however, to document her reasons for disallowing the other five questions as required by disciplinary hearing regulations, and the conviction was set aside.  (Docket Entry No. 35, Exhibits A, pp. 22-24; G.)

retaliation for his complaints about the officers and the strip search rules.  Plaintiff also claims that he was denied procedural due process at the disciplinary hearing and subsequent classification hearing.  Plaintiff seeks a declaratory judgment, injunctive relief returning him to his prior minimum security classification, and monetary damages, including nominal and punitive damages, against the defendants in their individual capacity.[2]

Defendants move for summary judgment, and argue that plaintiff's claims are unexhausted and/or without merit.

*Exhaustion*

Defendants Warden Detrah Lacy and Major Connley Moore move for dismissal of plaintiff's claims against them for his failure to exhaust his administrative remedies through the prison grievance system.  (Docket Entry No. 35, pp. 23-27.)  Plaintiff lodges claims against Lacy for her denial of his Step 1 grievance and for her supervisory role as the "new warden" over other defendants named in this lawsuit.   (Docket Entry No. 49, p. 2.)  He claims that it was Moore who graded the disciplinary charge as "major."  *Id.*

A prisoner who wishes to file a section 1983 suit against prison officials must exhaust administrative remedies before filing suit.  42 U.S.C. § 1997e(a); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).  Proper exhaustion is required, meaning that the prisoner must not only pursue all available avenues of relief, but must also comply with all administrative

---

[2]The Court dismissed plaintiff's official capacity claims against the defendants in a earlier interlocutory order.  (Docket Entry No. 33.)

4

deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-95 (2006). The courts do not inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness; prisoners simply "must exhaust such administrative remedies as are available, whatever they may be." *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). Furthermore, substantial compliance with administrative procedures is insufficient to permit pursuit of a federal lawsuit. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Unless the prisoner pursues his grievance remedy to conclusion, he has not exhausted his available remedies. *Id.*

Defendants assert that plaintiff failed to exhaust his claims against Lacy and Moore. Plaintiff responds that he named Lacy in his Step 1 grievance #2009161196 and Moore in his Step 2 grievance #2009161196. The TDCJ currently provides a two-step procedure for presenting administrative grievances. A prisoner must pursue his grievance at both the Step 1 and Step 2 levels in order to exhaust his administrative remedies. *Wright*, 260 F.3d at 358.

Petitioner admits that he pursued only a Step 1 grievance as to Lacy and only a Step 2 grievance as to Moore. Thus, by his own assertions, petitioner failed to exhaust his claims against these defendants through full compliance with the prison grievance system, and his claims against Lucy and Moore are unexhausted.

Even assuming plaintiff had properly exhausted his claims against Lacy, he asserts no viable section 1983 claim against her. Plaintiff expressly states that he is suing Lacy "under the doctrine of supervisory liability." (Docket Entry No. 49, p. 3.) Supervisory officials may

5

only be held liable under section 1983 if they were personally involved in the acts causing a constitutional violation, or implement unconstitutional policies that result in the plaintiff's injuries. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). By asserting that Lacy was the "new warden" responsible for the prison officers, he raises no viable section 1983 claim against her. To the extent plaintiff complains that she signed the grievance response denying his grievance, no claim of constitutional dimension is raised, as inmates enjoy no constitutional entitlement to satisfactory resolution of their prison grievances. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).

Nor does plaintiff raise an issue of constitutional dimension by his complaint that defendant Moore classified the May 5, 2009, disciplinary charge as "major." Neither the United States Supreme Court nor the Fifth Circuit Court of Appeals afford prisoners a protected liberty interest in the classification of their disciplinary charges.

Accordingly, defendants are entitled to summary judgment dismissing plaintiff's allegations against Lacy and Moore for failure to state a claim under section 1983. This dismissal does not encompass plaintiff's retaliation claim against Moore, which is discussed below.

### *Claims under the Fourth Amendment*

Plaintiff complains that the strip search order of May 4, 2009, and the strip search of May 5, 2009, were unreasonable and violated his protections against unreasonable searches and seizures under the Fourth Amendment.

6

The Fifth Circuit recognizes that a prisoner possesses a constitutional right to bodily privacy that "is minimal, at best," *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002), and "loses those rights that are necessarily sacrificed to legitimate penological needs." *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994). Accordingly, searches conducted on inmates must be reasonable under all the facts and circumstances in which they are performed; however, proving "reasonableness" is a light burden, because "a prison administrator's decision and actions in the prison context are entitled to great deference from the courts." *Id*. at 191.

A.    May 4, 2009, Strip Search Order

Plaintiff argues that the strip search order of May 4, 2009, which did not result in an actual strip search, was unreasonable because he was escorted to the kitchen and back by Lupau and thus did not need to be strip searched according to Gambrel. He also contends that he was still in the kitchen when ordered to strip search, and the strip search rule did not apply.

Defendants state that the strip search orders were imposed under authority of Post Order 07.025, promulgated by the Texas Department of Criminal Justice – Correctional Institutions Division (the "Post Order"). Under the Post Order, food service security officers are to conduct inmate searches as follows:

V.   Searches

    A.   In regards to searches, the officer shall conduct pat searches with random strip searches when appropriate prior to allowing entrances into the work area.

    B.   'Strip' search all offenders exiting a work area to prevent the removal of food items and contraband from the food service department.

    C.   Conduct periodic contraband searches of the offender dining halls and tray rooms.

(Docket Entry No. 35, Exhibit L.)

The Post Order was authorized under TDCJ Administrative Directive AD-03.22, which stated the following as to inmate strip searches:

II.   Strip Searches

    At times it may be necessary to strip search offenders to ensure staff safety, offender safety, and to detect the presence of contraband.  Strip searches are to be used only *when directed by specific post orders*, unit departmental policy, or when a supervisor believes there is reasonable cause to warrant such a search.  The search shall be performed in a professional manner.

(Docket Entry No. 35, Exhibit M, emphasis added.)

Plaintiff states in his affidavit that the strip search order of May 4, 2009, was unreasonable because he and Lupau "never left the immediate kitchen area to deposit trash because the barrels for trash are located in the kitchen area by the back door, but not outside the kitchen."  (Docket Entry No. 50, p.1.)  This is directly contradicted by plaintiff's own verified complaint, wherein he alleges that

8

> During the course of that breakfast shift, as anticipated, it came time to take a full bag of trash *to the kitchen area* for deposit, which was Cannon's duty to perform because *he worked the dining area trash detail*, but *before Cannon entered the kitchen area with the bag of trash*, he stopped and talked with Sgt. Gambrel, who was his immediate supervisor over dining room workers, and reiterated his objection to being strip searched because his job duty required him to take the trash to the back of the kitchen area. . . . [Gambrel] *unlocked the door to the kitchen for Cannon to enter*[.]

(Docket Entry No. 1, p. 4, emphasis added.)  Plaintiff's allegation in his affidavit that he was already in the kitchen area is directly contradicted by his allegations in his complaint that he had to take the trash from the dining room area into the kitchen.[3]  Plaintiff's contradictory factual allegations are insufficient to raise a genuine issue of material fact under Federal Rules of Civil Procedure Rule 56 as to whether the strip search order was not authorized by the Post Order and thereby unreasonable.  To the extent plaintiff complains that Lupau ordered the strip search while they were still located in the kitchen, their precise location at the time was immaterial, as the Post Order clearly provides that inmates can be strip searched whether entering or exiting the work area.

However, plaintiff also claims that the strip search order was unreasonable because defendant Gambrel had told Lupau to escort plaintiff into the kitchen "to negate the need to strip search Cannon."  (Docket Entry No. 50.)  Gambrel in her affidavit denied telling plaintiff that he would not need to be strip searched; Lupau in his affidavit testified that the

---

[3]Indeed, the basis for plaintiff's vocal complaints about the strip search rule was his repeated need to move trash bags from the dining room area into the kitchen; he did not want to undergo numerous strip searches during his work shift.

escort was for security purposes, and was not in lieu of a strip search.  (Docket Entry No. 35, Exhibits I, K.)  Under plaintiff's assertions, the strip search would have been unreasonable because Lupau had been with him the entire time he was in the kitchen, as ordered by Gambrel; under defendants' assertions, the strip search would have been a reasonable exercise of the prison's legitimate penological interest in maintaining security and preventing theft.

Although defendants properly assert the need for strip searches as generally promoting a legitimate penological interest in maintaining security and preventing theft, and they specifically deny plaintiff's assertions that Gambrel had instructed Lupau to escort plaintiff in order to circumvent the need for a strip search, plaintiff nonetheless has raised a genuine issue of material fact as to whether the May 4, 2009, strip search order was reasonable "under all the facts and circumstances."  *Elliott*, 38 F.3d at 191.  The Court further finds that defendants have not established their defense of qualified immunity as a matter of law, based on the factual issues presented by plaintiff.  The Court DENIES defendants' motion for summary judgment as to plaintiff's Fourth Amendment claims regarding the strip search order of May 4, 2009.

B.    May 5, 2009 Strip Search

Plaintiff complains that the May 5, 2009, strip search was unreasonable because defendant Comeaux's justification for the search – a suspicion that plaintiff possessed

10

contraband – was a pretext.  (Docket Entry No. 1, pp. 5-6.)  Plaintiff states that the strip search was performed by another prison officer at the instruction of Comeaux.  *Id.*

A careful review of defendants' motion for summary judgment shows that defendants have not moved for summary judgment on plaintiff's claims regarding the May 5, 2009, strip search.  Plaintiff's allegations are sufficient to raise a Fourth Amendment claim, and this claim will be carried forward with the case.  *See Tuft v. Chaney*, No. 10-20136 (5th Cir. 2011).

*Claims for Retaliation*

Plaintiff claims that various actions taken by the defendants were done in retaliation for his exercise of his First Amendment rights to voice his complaints regarding unconstitutional strip search orders and other violations of his constitutional rights.

To prevail on the claim for retaliation under section 1983, a prisoner must prove (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation – that, but for the retaliatory motive, the complained of incident would not have occurred.  *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998).  The prisoner must produce direct evidence of motivation, or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred.  *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995).  "The inmate must allege more than his personal belief that he is the victim of retaliation." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1999).

11

A.    Retaliatory Strip Search Orders and Search

Plaintiff asserts that the strip search order of May 4, 2009, and strip search of May 5, 2009, were done in retaliation for his complaints regarding the strip search rule and his grievances against one or more of the defendant officers.  Because the defendants have not addressed in their motion for summary judgment the circumstances surrounding plaintiff's May 5, 2009, strip search, the Court cannot summarily dismiss plaintiff's retaliation claim.  Similarly, plaintiff does not establish his right to judgment on this claim as a matter of law, and his cross-motion for summary judgment on this claim is DENIED.  Accordingly, plaintiff's retaliation claim arising from the strip search of May 5, 2009, will be taken with the case.

Defendants do, however, address the circumstances surrounding the strip search order of May 4, 2009.  In her affidavit submitted in support of defendants' motion for summary judgment, defendant Gambrel testified in relevant part as follows:

> As a result of my position [as Sergeant at the Goree Unit], I have personal knowledge of the [Case] that took place on May 4, 2009, involving inmate Cannon.  On May 4, 2009, inmate Cannon was written an offense report for failing to obey an order, given by Officer Lupau, for failing to submit to a strip search after completing his kitchen-duty assignment.
>
> I am the supervising officer over the kitchen detail.  I was present when Cannon failed to follow Officer Lupau's order.  On that date, I recall Cannon leaving the kitchen area in which he was assigned.  Upon returning to the area, Lupau instructed Cannon to strip search in order to assure that Cannon had not brought contraband back into the kitchen area.  Cannon responded that he did not see a need to strip search and that he was not going to comply.  Cannon

was again asked to abide by the order and refused.  At that point, Cannon was written up for failing to obey an order.

Inmate Cannon alleges that he was falsely charged in failing to obey an order to strip search and that I should have intervened by telling Officer Lupau and Sergeant Comeaux that he did not need to be strip searched.  I never instructed Cannon not to adhere to an order to be strip searched, nor did I make a statement that strip searching Cannon was unreasonable.  All inmates were strip searched.  This is specifically stated in post Order 07.025, issued by TDCJ-CID.  Hence, based on Cannon's failure to comply with the order, a disciplinary case was proper.

Further, Cannon's behavior on that date was not uncommon.  On many days, Cannon contested direct orders.  Cannon was well aware that all inmates that worked kitchen detail were required to strip search upon entering and exiting the kitchen.  This was being strictly enforced at the time due to inmates assigned to kitchen detail trafficking contraband.  In fact, Cannon had been disciplined in case #20090178652, prior to May 4, 2009, for having contraband in his pocket.

Moreover, I follow standard operating procedures when supervising inmates. No inmate is given more privileges on kitchen detail that would allow him to avoid being strip searched.  Therefore, Cannon did not have implied or verbal permission to avoid being searched.  Thus, Cannon was disciplined according to proper procedures.

(Docket Entry No. 35, Exhibit I.)

Defendant Comeaux testified in his affidavit as follows:

As a result of my position (as Sergeant at the Goree Unit), I have personal knowledge of the [Case] that took place on May 4, 2009, involving inmate Cannon.  On May 4, 2009, inmate Cannon was written an offense report for failing to obey an order, given by Officer Lupau, by failing to submit to a strip search after completing his kitchen-duty assignment.

I am the supervising officer over the kitchen detail.  I was present when Cannon failed to follow Officer Lupau's order.  On that date, I recall Cannon leaving the kitchen area in which he was assigned.  Upon returning to the area,

13

Lupau instructed Cannon to strip search in order to assure that Cannon had not brought contraband back into the kitchen area. Cannon responded that he did not see a need to strip search and that he was not going to comply. Cannon was asked again to abide by the order and he refused. I then instructed Cannon to adhere to Lupau's order and he responded that he would not. At that point, Cannon was written up for failing to obey an order.

Inmate Cannon alleges that he was falsely charged in failing to obey an order to strip search and that I retaliated against him by demanding that Office Lupau write him up without cause. He further alleged that I told him that I could strip search him for any reason, without it being justified. I never told Cannon that I could strip search him without just cause. I did, however, inform him that I could strip search him at anytime while working in the kitchen if I saw a need to do so. This is specifically stated in Post Order 07.025, issued by TDCJ-CID. Hence, based on Cannon's failure to comply with the order, a disciplinary case was proper.

Further, Cannon's behavior on that date was not uncommon. On many days, Cannon contested direct orders. Cannon was well aware that all inmates that worked kitchen detail were required to be strip searched upon entering and exiting the kitchen. This was being strictly enforced at the time due to inmates assigned to kitchen detail trafficking contraband an[d] stealing kitchen supplies and food.

Moreover, I follow standard operating procedures when supervising inmates. No inmate is given more privileges on kitchen detail than others. Therefore, Cannon did not have implied or verbal permission to avoid being strip searched. Thus, Cannon was disciplined according to proper procedure.

(Docket Entry No. 35, Exhibit J.)

Defendant Lupau testified in his affidavit as follows:

As a result of my position [as Correctional Officer at the Goree Unit], I have personal knowledge of the [Case] that took place on May 4, 2009, involving inmate Cannon. On May 4, 2009, inmate Cannon was written an offense report for failing to obey an order given by myself because he failed to submit to a strip search after completing his kitchen-duty assignment.

On that date, Cannon was assigned to the trash detail in the main chow hall area where other inmates were eating. Once the trash was collected, Cannon asked me to escort him to another area where the trash was placed for pick up. I did. Cannon and I had to go through the chow hall where other inmates were still present. Upon returning to the area, I instructed Cannon to strip in order to search him to assure that Cannon had not brought contraband back into the kitchen area after being assigned to the chow hall. Cannon responded that he did not see a need to strip search and that he was not going to comply. Again, I instructed Cannon to comply with the order and he continuously refused. I told Cannon that we could strip search him at any time when we saw that it was necessary according to TDCJ policy, specifically Post Order 07.025. After he was yet still adamant in refusing to strip, I wrote Cannon up for failing to obey an order.

Inmate Cannon alleges that he was falsely charged in failing to obey an order to strip search and that since I escorted him to the trash can, he did not need to be strip searched. The purpose of me escorting him was not so that Cannon could avoid being strip searched; it was for security purposes. Furthermore, Cannon knew that we were being more cautious due to the recent thefts that had been taking place around that time period. Moreover, Cannon had complied with strip searches prior to that date, so this procedure was no surprise to him. All inmates were strip searched. This is specifically stated in post Order 07.025, issued by TDCJ-CID. Hence, based on Cannon's failure to comply with the order, a disciplinary case was proper.

Further, Cannon's behavior on that date was not uncommon. On many days, Cannon contested direct orders. In fact, I had written Cannon up for having contraband just days before that incident, in discipline case #20090178652.

Moreover, I follow standard operating procedures when supervising inmates. No inmate is given more privileges on kitchen detail that would allow him to avoid being strip searched. Therefore, Cannon did not have implied or verbal permission to avoid being searched. Thus, Cannon was disciplined according to proper procedure.

(Docket Entry No. 35, Exhibit K.)

Plaintiff does not establish the element of causation as to this retaliation claim; that is, he does not show that, but for a retaliatory motive, he would not have been ordered to strip search.  To the contrary, the probative summary judgment evidence shows that the Post Order requirement for strip searches was in place; the inmate workers had been informed that the strip search procedures would be strictly enforced due to increased inmate thefts of kitchen items; plaintiff's job duties required him to move trash bags from the dining area to the kitchen area, which fell within the parameters of the Post Order strip search requirement; he had been ordered to strip search in the course of moving trash bags from the dining area to the kitchen; and he refused to submit to the strip search when ordered.  The factual dispute between the parties arises over plaintiff's assertions, and defendants' denials, that he was told having an escort in the kitchen would negate the need for a strip search.  Consequently, defendants are entitled to summary judgment dismissal of plaintiff's retaliation claim regarding the strip search order of May 4, 2009.

B.    Retaliatory Disciplinary Charge

Similarly, plaintiff claims that he was charged with the Case solely because of a retaliatory motive on the part of one or more of the defendants.  For the same reasons, and based on the same probative summary judgment evidence, as his retaliation claim fails regarding the strip search order of May 4, 2009, his retaliation claim fails regarding the disciplinary charge.  Plaintiff does not establish the element of causation as to this retaliation claim; that is, he does not show that, but for a retaliatory motive, he would not have been

16

charged with the Case.  Defendants are entitled to summary judgment dismissal of plaintiff's

retaliation claim regarding the disciplinary charge.

Plaintiff also claims that defendant Moore's grading of the disciplinary charge as

"major" was in retaliation for plaintiff's complaints and filing of grievances.  In his affidavit

submitted in support of defendants' motion for summary judgment, defendant Moore testifies

in relevant part as follows:

> As a result of my position as [Major at the Goree Unit], I have personal
> knowledge of the [Case] that took place on May 4, 2009, involving inmate
> Cannon.  On May 4, 2009, inmate Cannon was written an offense report for
> failing to obey an order, given by Officer Lupau, by failing to submit to a strip
> search after completing his kitchen-duty assignment.  On May 5, 2009, I
> received the offense report from Officer Lupau's supervising Lieutenant,  I
> then utilized Cannon's Offender Case Grading Report that contained Cannon's
> disciplinary information to determination the disciplinary grade level.  The
> outcome of grading report recommended that Cannon's [Case] be graded as
> a Major Disciplinary Offense.  Therefore, I graded Cannon's case accordingly,
> On May 11, 2009, inmate Cannon was found guilty of a major-disciplinary
> offense and [was] subsequently demoted from a Level I status to Level III.
> Consequently, inmate Cannon was reviewed by the [UCC], in which he was
> demoted from G2 custody to G4 custody, and subsequently transferred to
> another unit.
>
> Inmate Cannon alleges that the disciplinary proceeding where I graded his case
> as major was retaliatory and unjustified.  First, it is policy for all inmates that
> work the kitchen detail to submit to a strip search following their work
> assignment.  This is specifically stated in Post Order 07.025, issued by TDCJ-
> CID.   Hence, based on Cannon's failure to comply with the order, a
> disciplinary case was proper.
>
> Furthermore, I follow standard operating procedures when evaluating the
> disciplinary grading of all inmates.  Thus, Cannon's disciplinary information
> was entered into the Offender Disciplinary System prior to me determining his
> offense level.  This system provides a recommendation as to how an inmate's

17

offense is graded.   Based upon the grading system's recommendation, Cannon's offense was graded as major.  To override this recommendation, the grading officer must supply a detailed explanation as to why an override is warranted.  In this case, no override could be justified.  Therefore, the major grade remained.

\*   \*   \*   \*

Cannon's disciplinary grade was determined utilizing only proper procedures that are according to TDCJ policy.

(Docket Entry No. 35, Exhibit F.)  Again, plaintiff does not establish causation – that is, he does not prove that, but for a retaliatory motive, defendant Moore would not have graded the Case as "major."  To the contrary, the probative summary judgment evidence shows that Moore utilized the prison's standardized and computerized process for grading disciplinary charges, and followed the resulting recommendations of that system.  Plaintiff presents no probative summary judgment evidence controverting Moore's testimony that he adhered to the prison's standardized system in grading the Case.

Defendants are entitled to summary judgment dismissal of plaintiff's retaliation claim regarding the grading of the Case as "major."

C.   Retaliatory Prison Transfer

Plaintiff avers that he was transferred from the Goree Unit to the Beto Unit in retaliation for his grievances and complaints about one or more of the defendant officers' actions and the strip search rules.  As with his earlier retaliation claims, plaintiff fails to

18

establish causation – that is, he does not show that, but for a retaliatory motive, he would not have been transferred to the Beto Unit.

In his affidavit submitted in support of defendants' motion for summary judgment, defendant McComb, Jr., testifies in relevant part as follows:

> As a result of my position [as Assistant Warden at the Goree Unit], I have personal knowledge of the Unit Classification Review that took place on May 15, 2009, involving inmate Cannon's reclassification status. On May 4, 2009, inmate Cannon was written an offense report for failing to obey an order, given by an officer, by failing to submit to a strip search after completing his kitchen-duty assignment. On May 11, 2009, inmate Cannon was found guilty of a major-disciplinary offense and [was] subsequently demoted from a Level I status to Level III. Consequently, inmate Cannon was reviewed by the Unit Classification Committee (UCC), in which I oversaw. The committee conducted a complete review of Cannon's classification record and thereby demoted him from G2 custody to G4 custody.
>
> Inmate Cannon alleges that the UCC's decision to demote him to G4 custody and to transfer him to another unit was retaliatory. Cannon further claims that the UCC 'failed to consider [his] argument that the disciplinary action was unjustified, which [was the] basis for the reclassification hearing.' Inmate Cannon is misinformed regarding the rules and regulations, which govern TDCJ and the Goree Unit.
>
> First, it is policy for all inmates that work in the kitchen detail to submit to a strip search following their work assignment. This is specifically stated in Post Order 07.025, issued by TDCJ-CID. Hence, based on Cannon's failure to comply with the order, a disciplinary case was proper, and the UCC adhered to the findings of the disciplinary hearing officer that demoted him to Level III status.
>
> Furthermore, the [UCC] follows standard operating procedures when evaluating the reclassification of all inmates, including inmates found guilty of a disciplinary offense. Cannon was reclassified as a G4 offender, as shown on Cannon's [UCC] History Form. This was done based on the fact that when the computer system was updated with Cannon's demotion to Line III, the

computer would have recommended a downgrade to G4 custody.  The Goree
Unit houses only G1-G3 custody offenders.  Therefore, due to Cannon's G4
Custody status, he could no longer be housed on the unit.  To that end, the
UCC placed inmate Cannon in transient status awaiting transfer, which took
place on May 26, 2009, to the Beto Unit.

*    *    *    *

Therefore, the decision by the UCC to demote inmate Cannon was based solely
on proper protocol and unit procedures.

(Docket Entry No. 35, Exhibit E.)[4]  Although the Case was set aside in July of 2009, plaintiff

had already been reclassified and transferred to the Beto Unit by that time.  Plaintiff's

disciplinary records show that his Level I status was restored on July 22, 2009, following

reversal of the Case.  (Docket No. 35, Exhibit A, p. 27.)

Plaintiff presents no probative summary judgment evidence controverting defendants'

summary judgment evidence that the reclassification and transfer were the result of plaintiff's

demotion in line status he received in punishment for the disciplinary conviction.  Defendants

are entitled to summary judgment dismissal of plaintiff's retaliation claim regarding his

transfer to the Beto Unit.

*Claims for Denial of Procedural Due Process*

Plaintiff claims that his rights to procedural due process were denied in his

disciplinary and classification hearings, citing *Wolff v. McDonnell*, 418 U.S. 539 (1974), and

---

[4]Defendant Shelly submitted a similarly-worded affidavit regarding her participation in
the UCC proceeding in her capacity as Program Supervisor I - Chief of Unit Classification.
(Docket Entry No. 35, Exhibit H.)

20

*Sandin v. Conner*, 515 U.S. 472 (1995).  These claims sound in habeas, not civil rights. Regardless, plaintiff does not show that he is eligible for mandatory supervised release, such that he had a protected liberty interest in the disciplinary proceedings.  *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000).  Moreover, the disciplinary conviction was overturned, and plaintiff has received all required procedural due process.  Because plaintiff lacked a constitutionally protected liberty interest in his classification status, he cannot complain of the constitutionality of the procedural devices attendant to that decision.  *See Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995).  To any extent plaintiff complains that prison rules or regulations were not followed, the Fifth Circuit has held that a violation of prison rules alone is not sufficient to rise to the standards of a constitutional claim.  *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Defendants did not seek summary judgment on these claims.  Accordingly, plaintiff's claims for denial of procedural due process are DISMISSED for failure to state a claim under section 1983.

*Conclusion*

The Court ORDERS as follows:

1.    Defendants' motion for summary judgment (Docket Entry No. 35) is GRANTED IN PART and the following claims are DISMISSED WITH PREJUDICE: plaintiff's claims against Detrah Lacy; plaintiff's claims against Connley Moore; and plaintiff's claims for retaliation, except as to the strip search of May 5, 2009.

2.    Plaintiff's claims for denial of procedural due process are DISMISSED for failure to state a claim under section 1983.

3.    Defendant's motion for summary judgment (Docket Entry No. 35) is DENIED as to plaintiff's Fourth Amendment claims and his claim for retaliation as to the strip search of May 5, 2009.

4.    Plaintiff's cross-motion for summary judgment (Docket Entry No. 53) is DENIED.

5.    The Court will enter a separate Scheduling Order in this case.

THIS IS AN INTERLOCUTORY ORDER.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on March 31, 2011.

_____

Gray H. Miller
United States District Judge