IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES MAURICE CANNON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-4057 |
| | § | |
| RAYMOND S. LUPAU, ET AL., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is defendants' second motion for summary judgment (Docket Entry No. 63), to which plaintiff, through counsel, filed a response (Docket Entry No. 66), and defendants filed a reply (Docket Entry No. 67).

The Court's earlier Memorandum Opinion and Order (Docket Entry No. 56) granted in part and denied in part defendants' first motion for summary judgment. Plaintiff was allowed to proceed against defendants Raymond Lupau and Mark Comeaux on his Fourth Amendment claim arising from a strip search order of May 4, 2009, and his Fourth Amendment and retaliation claims arising from a strip search of May 5, 2009.

In the instant second motion for summary judgment, defendants seek summary judgment dismissal of those remaining claims. Based on consideration of the pleadings, the motion, response, and reply, the record, and the applicable law, the Court GRANTS IN PART and DENIES IN PART defendants' second motion for summary judgment, as follows.

### *Analysis*

The Court's earlier Memorandum Opinion and Order set forth the relevant facts, claims, and applicable law, and those matters will not be repeated here except as necessary to address the pending arguments and issues.

*Strip Search Order of May 4, 2009*

Defendants argue that the strip search order of May 4, 2009, did not give rise to a Fourth Amendment violation because plaintiff refused to comply with the order and no strip search was performed. Plaintiff agrees no strip search was undertaken, but contends that a constitutional violation nevertheless occurred because the strip search order contravened, or arguably contravened, a written prison rule regarding inmate strip searches.

As correctly argued by defendants, a violation of prison rule or policy alone does not constitute a constitutional violation. The Fifth Circuit Court of Appeals has long recognized that a violation of a prison rule by itself is insufficient to establish a constitutional violation. *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). Plaintiff further argues that, even if he was not strip searched, he was injured by the order because he received a disciplinary conviction resulting in loss of good time credit as a result of his failure to comply with the order.[1] Plaintiff's argument, however, is unavailing as there was no Fourth Amendment violation in the first instance to which an issue of injury can attach, and he presents no authority establishing that an order for a strip search that is not undertaken gives rise to an actionable Fourth Amendment violation.

---

[1] As noted by the parties and the Court in the first summary judgment proceeding, the disciplinary conviction was overturned on administrative appeal on technical grounds.

2

Accordingly, defendants are entitled to summary judgment dismissal of plaintiff's Fourth Amendment claim regarding the strip search order of May 4, 2009, and plaintiff's claim is DISMISSED WITH PREJUDICE.

*Strip Search of May 5, 2009*

Plaintiff did, however, undergo a strip search on May 5, 2009. In his affidavit attached to his response to the second motion for summary judgment, plaintiff testifies as follows:

> Immediately upon reporting to work on May 5, 2009, at about 3:15 [a.m.], [I] enetered [sic] the the [sic] chow hall through the dining room (not the kitchen) and approached Sgt. Comeaux and stated, 'I need to attempt to informally resolve an issue with you before I file my grievance.'. . .Then [I] stated that [I] believed the strip searches were 'unreasonable and unjustified,' Comeaux responded by saying, 'Cannon I can strip search you anytime I get ready, and I don't need no reason to do so; [a]s a matter of fact, [g]et out of 'em right now.' To which order [I] replied, 'You don't have reasonable cause because I haven't even been in the kitchen yet.' [I] then requested to speak with a supervisor or ranking officer before submitting to the unjustified order; Comeaux then ordered [me] to stand on a wall and wait while security was called. [I] was escorted by [sic] out of the chow hall by Lt. Villegas and strip searched. No contraband was found, Comeaux gave suspicion of contraband as the reason for the search when asked by Villegas. [I] was returned to work [without] further incident.

(Docket Entry No. 66, Exhibit C, p. 6.) According to plaintiff, it was Villegas who ordered him to submit to a strip search, but the order was based on Comeaux's fabricated suspicion that plaintiff possessed contraband.

Under *Waddleton v. Jackson*, 445 F. App'x 808, 809 (5th Cir. 2011), a court must determine whether a strip search was reasonable under all of the facts and circumstances in which it was made. The Fifth Circuit added that the burden is a light one but, nonetheless, prison officials have the burden to show that there was a legitimate penological need for the strip search. *Id.* In analyzing the reasonableness of the search, the court balances the need for the search against the invasion of

3

personal rights that the search entailed by considering the scope of the intrusion, the manner in which it was conducted, the justification for it, and the place in which it was conducted. *Id.*

In the instant case, defendant Comeaux denies having ordered plaintiff to strip, and testified at his deposition that he had tried to explain the strip search policy to plaintiff. (Docket Entry No. 63, Comeaux Deposition, pp. 84–86.) Although it was Villegas who subsequently ordered plaintiff to submit to a strip search, plaintiff claims the order was based on Comeaux's suspicions that plaintiff possessed contraband. Comeaux, however, denied telling Villegas that he suspected plaintiff had contraband. *Id.*, p. 89. Thus, genuine issues of material fact exist as to whether Comeaux ordered plaintiff to submit to a strip search, or whether he falsely told Villegas that he suspected Comeaux possessed contraband, and the reasonableness of the actual strip search cannot be determined as a matter of law by this Court. *Waddleton.*

Defendant Comeaux claims that he is, nonetheless, entitled to qualified immunity. When an official pleads qualified immunity as a defense, this alters the summary judgment burden of proof by shifting it to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A two-step process has traditionally been employed in evaluating the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). Under this approach, a court must first consider whether the facts alleged show the officer's conduct violated a constitutional right. *Id.*, at 201. If so, the court then considers whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Short v. West*, 662 F.3d 320, 325 (5th Cir. 2011). To make this determination, the court applies an objective standard based on the

4

viewpoint of a reasonable officer in light of the information then available to him and the law that was clearly established at the time of the officer's actions. *Id*. To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact acts have been unconstitutional. *Id*., at 236–37. In short, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). Summary judgment may be based on either step in the qualified immunity analysis, and the courts may decide "which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Genuine issues of material fact prevent this Court's determination of qualified immunity at this juncture, because plaintiff and Comeaux present conflicting versions of the relevant underlying facts of May 5, 2009. Plaintiff claims that Comeaux told him he did not need a reason to order a strip search, then ordered plaintiff to remove his clothes. When plaintiff complained to Villages, Comeaux falsely told Villegas that he suspected plaintiff of possessing contraband, causing Villegas to order the subject strip search. Comeaux, on the other hand, denies both ordering plaintiff to submit to the strip search and telling Villegas that he suspected plaintiff possessed contraband. Under the version posited by Comeaux, Villegas made an independent decision to order plaintiff strip searched, and Comeaux's involvement was limited to notifying Villegas of plaintiff's general complaints regarding the strip search policy.

5

Accordingly, defendants' second motion for summary judgment as to plaintiff's Fourth Amendment claim regarding the strip search of May 5, 2009, is DENIED.

*Retaliation*

Plaintiff claims that his strip search of May 5, 2009, was undertaken in retaliation for exercising his First Amendment right to complain about the strip search policy and filing grievances against prison officers.  (Docket Entry No. 66, p. 26.)

To prevail on a section 1983 claim for retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation.  *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006).  Prison officials may not retaliate against an inmate for using the grievance system.  *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989).  A plaintiff must show that the defendant possessed a retaliatory motive and that, but for a retaliatory motive, the defendant would not have engaged in the purported retaliatory action.  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).  An inmate must present more than his personal belief that he was the victim of retaliation, and conclusory allegations of retaliation will not suffice.  *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999). The inmate must produce direct evidence of motivation for the alleged retaliation or a chronology of events from which retaliation may plausibly be inferred.  *Id*., at 326.

Plaintiff argues that the events of May 5, 2009, present a chronology of events from which this Court may plausibly infer retaliation: he complained about the strip search policy, and Comeaux immediately ordered him to submit to a strip search.  Plaintiff further argues that Comeaux admits he strip searched him because of his "incessant complaints."  *Id*., p. 28.  Plaintiff's conclusory assertion of causation is not borne out by Comeaux's deposition. Comeaux testified that plaintiff

6

"whines a lot," but that he is "not a bad worker," and so Comeaux overlooked plaintiff's whining. (Docket Entry No. 63, Comeaux Deposition, p. 22.)   Comeaux stated that plaintiff "questions authority a lot" but "stays within the guidelines."   *Id.*   Comeaux testified that a lot of the inmates question authority, and that he does not "mind that at all," but "the bottom line is, whatever the rules state is what they're going to do."   *Id*., p. 23.   Specifically, Comeaux "liked [plaintiff] because he was a good worker.   He was amusing to me as well, but he didn't – you know, he wasn't a headache."   *Id*. p. 28.   Comeaux was unaware of plaintiff's helping other inmates write grievances or lawsuits, and testified that plaintiff was "not on that caliber" to function as a writ writer.   *Id*., p. 31.

In discussing the specific events of May 5, 2009, Comeaux testified as follows:

Q:    Did he say anything to you?

A:    He wanted to talk about the case, yes.   He wanted to talk about it.

Q:    Did he come – did he approach you to talk about it?

A:    Yes, but at that point, I can't.

Q:    Where were you when he –

A:    I – we were on the line.   He was coming to work. I was in the line standing. He came up to me.   You know, we had a rapport in the past.   So, he came up to me on – in kind of an informal way.

Q:    Okay.   Did you tell him that you had the authority to ask him to do a strip search at any time?

A:    I said – I told him we, meaning the whole staff – I say we or I, I'm not just talking about myself – with a reasonable suspicion, that we could strip him anytime, that he was wrong about it, that we could.

Q:    Okay.

A:     I was trying to reason with him.  You know, I said, 'We can anytime we want.'

Q:     Did you –

A:     I said, 'We think – think something is up, we can do it.'

Q:     Did you tell him to drop them right then?

A:     No.

Q:     Okay.

A:     There was no reason to.  I saw that statement.  That's not true.

Q:     Okay.  So, you deny that you made that statement?

A:     No.  I made the statement, but not like he said it.  I didn't say – I said, 'We can do it with – every time with reasonable suspicion.'

Q:     Okay.

A:     I didn't say anytime like that because we can't.  That's –

Q:     Okay.

A:     And I – I would not have done that to him because that – that would've been inhumane for me to make a man get out of his – I would – that's – that's not me.  You can look at my history.  That's not the way I – that's not the way I – [.]

*Id.*, pp. 84–86.  Comeaux further denied telling Villegas that he suspected plaintiff of possessing contraband.  *Id.*, p. 89.[2]

Plaintiff, on the other hand, testifies in his affidavit that, after he complained to Comeaux regarding the strip search policy,

---

[2]The deposition is unclear at certain points as to whether Comeaux was discussing the events of May 4, 2009, or the events of May 5, 2009.

8

Comeaux replied, 'Cannon, I can strip-search you any time I get ready, and I don't need no reason to do so.'  [I] replied that [I] would grieve the matter, and Comeaux stated in a sarcastic tone, 'Cannon, how did I know that you would be the one[,'] meaning that I was the only one who ever spoke up and objected to his actions and filed grievances accordingly. [I] believe that it was that exchange between myself and Comeaux that was the motivating factor for the following retaliatory events of May 4th and 5th.

(Docket Entry No. 66, Exhibit C, p. 4.)

Plaintiff further testified in his affidavit as follows:

Lupau followed [me] into the dining room and before [I] could speak, started shouting, 'Cannon is refusing to strip.'  At which point, Sgt. Comeaux, who was standing there talking to Sgt. Gambrel, stated, 'We got you now, Cannon.' It was obvious to me at that time that it was a set up that was intentionally designed by Comeaux and Lupau (and possibly Gambrel) to retaliate against me for my litigious nature and grievances filed.

*Id.*, p. 5.

Contrary to his arguments, plaintiff does not present a chronology of events from which retaliation may plausibly be inferred by this Court.   Moreover, plaintiff presents only his personal belief that he was the victim of retaliation, and his conclusory allegations are insufficient to establish retaliation or to preclude the granting of summary judgment dismissal of his claim. *See Jones*, 188 F.3d at 324–25.

Defendants are entitled to summary judgment dismissal of plaintiff's claim for retaliation regarding the events of May 5, 2009, and his retaliation claim is DISMISSED WITH PREJUDICE.

*Conclusion*

The Court ORDERS as follows:

1.    Defendants' second motion for summary judgment (Docket Entry No. 63) is
      GRANTED IN PART and plaintiff's Fourth Amendment claim regarding the strip
      search order of May 4, 2009, and his retaliation claim regarding the strip search of
      May 5, 2009, are DISMISSED WITH PREJUDICE.

2.    Defendant's second motion for summary judgment (Docket Entry No. 63) is
      DENIED IN PART as to plaintiff's Fourth Amendment claim regarding the strip
      search of May 5, 2009.

THIS IS AN INTERLOCUTORY ORDER.

Signed at Houston, Texas on March 7, 2013.

_____
Gray H. Miller
United States District Judge

10